## No. 12,344.

Rugby Coal Company *v.* Interstate Fuel Company.

(285 Pac. 764)

Decided February 17, 1930. Rehearing denied March 3, 1930.

Mr. F. T. Henry, Mr. S. A. Henry, Mr. Milnor E. Gleaves, for plaintiff in error.

Messrs. Webster, West & Drath, for defendant in error.

*In Department.*

Mr. Justice Moore delivered the opinion of the court.

The Interstate Fuel Company had judgment in the district court against the Rugby Coal Company for $5,-055.64, being the balance due for coal delivered at an agreed price by the former to the latter from January 7, 1928, to May 14, 1928. The fuel company had admitted the delivery of the coal and the balance due for which judgment was rendered, but sought by its counterclaim to recover damages in the sum of $55,611.89 occasioned by loss of profits arising out of a breach of an alleged contract between the parties therein set forth. The purported agreement set forth in the counterclaim is alleged to have resulted from the following letters:

"May 20, 1927
"Rugby Coal Company, 501 15th, Denver, Colorado
                "Attention Mr. Rugby
"Dear Sir: Confirming our conversation of today, we quote you the following price on Imperial coal:

| | |
|---|---|
| 6" lump | $3.00 |
| 2½" lump | 2.75 |
| 6" mine run | 1.75 |
| 2½"x6" egg | 2.25 |
| Slack | 1.25 |

"Our understanding of the agreement made today is that we are to receive seventy-five per cent of your Weld county lignite business for the following year for which time this agreement is to run. Our understanding also is that your tonnage involved in this agreement should approximate twelve to fifteen thousand tons and that the slack coal should be approximate half of this tonnage.

"Please acknowledge receipt and acceptance of this letter.

"Yours very truly,<br>
"Interstate Fuel Company<br>
"L. A. McBrian."

"Denver Colorado, May 31, 1927.
"The Interstate Fuel Company., 310 Symes Bldg., Denver, Colorado.

"Gentlemen:

"Attention of Mr. L. A. McBrian.

"This will acknowledge receipt of your letter of May 20, 1927, relative to agreement on Imperial coal to be furnished us during the coming year. As the Imperial mine is located in Weld county we have changed your letter to read Weld county lignite coal and this agreement will have no bearing on Boulder county and other coals.

"The prices of $3.00 per ton for 6″ lump, $2.75 per ton for 2½″ lump, $1.75 for 6″ mine run, $2.25 for 2½″x 6″ egg and $1.25 for 2½″ slack being the prices agreed on.

"The above is hereby accepted and we agree to purchase approximately seventy-five per cent of our Weld county coal from you, providing, however, that the quality and preparation are equal to the coal delivered us from this mine during the past few weeks.

"Yours very truly,<br>
"The Rugby Coal Company,<br>
"Manager."

The replication of the fuel company admitted the deliv-

ery of its letter to the coal company, except that the words "Weld county" were therein inserted by the coal company, and the receipt of the coal company's letter in reply thereto. The trial was to the court, a jury being waived. The fuel company objected to the introduction of evidence in support of the counterclaim and the court, holding that it failed to state sufficient facts, sustained the objection and ordered its dismissal. The motion of the coal company for a new trial was denied and judgment rendered as aforesaid. The coal company now seeks to review this judgment.

If the counterclaim set forth a binding agreement between the parties, the lower court erred in dismissing the same, otherwise not.

The letter of the fuel company constituted an offer to deliver to the coal company for a period of one year certain kinds of coal at prices stipulated therein, in consideration of the coal company's agreement to receive 75 per cent of the coal required for its lignite business for the following year from the fuel company, said business to approximate twelve to fifteen thousand tons, one-half of which to be slack coal. The coal company's letter in reply thereto discloses that this offer of the fuel company was not accepted. It states that the words "Weld county" were inserted by the coal company in the fuel company's letter apparently for the reason that the Imperial mine from which the coal was to be obtained was located in Weld county and further provides that "this agreement will have no bearing on Boulder county and other coals." The prices for said coal are as contained in the fuel company's offer but 2½" slack is specified in the reply and not "slack" as in the offer. The concluding paragraph of the letter purports to be an acceptance of the fuel company's offer as modified by the coal company as hereinabove stated and with the further modification that the coal company agrees, "to purchase approximately 75 per cent of our Weld county coal from you, providing, however, that the quality and preparation are equal to the

coal delivered us from this mine during the past few weeks.''

In discussing the effect of these two letters, we shall assume that the sole source of the fuel company's Imperial lignite coal was the Imperial mine located in Weld county; that there is no distinction between 2½" slack and ''slack'' coal and that the expression in the letter of the fuel company ''your Weld county lignite business'' means or was intended to mean the coal company's requirements for Imperial coal mined in Weld county and not Imperial coal required for the coal company's retail sales of coal in Weld county. Notwithstanding we concede these assumptions to be facts, still the purported acceptance of the fuel company's offer cannot be held to constitute an acceptance of the terms therein contained.

The coal company did not agree to receive 75 per cent of its requirements for Imperial coal mined in Weld county. It purported to agree to receive *approximately* 75 per cent of its requirements for such coal. The coal company did not agree that the tonnage in the contract would approximate twelve to fifteen thousand tons and that the slack coal would approximate half thereof. The coal company sought further to qualify its acceptance of this offer by the provision that the coal delivered under the agreement was to be in quality and preparation equal to that received from this mine during the past few weeks.

These modifications of the fuel company's offer are substantial and material and effectually operate as a refusal to accept the terms of the fuel company's offer and constitute a counter-proposition or offer to the fuel company which the record discloses was never in fact accepted. It is clearly apparent that the minds of the parties never met upon the exact terms and conditions of the contemplated agreement and therefore there was no enforceable contract consummated. *Cohen v. Clayton Coal Co.*, 86 Colo. 270, 281 Pac. 111. There being no existing

contract, it is not necessary to consider the questions of uncertainty, ambiguity and lack of mutuality.

It is urged that the court should not have dismissed the coal company's counterclaim, but should have permitted an amendment thereto. After the court had sustained plaintiff's objection to the introduction of any evidence in support of its counterclaim because it failed to state sufficient facts, the coal company did not ask for an order permitting it to amend its counterclaim, and filed its motion for a new trial containing no request for an amendment, thereby waiving its right to amend. The only suggestion that an amendment was desired appears in the brief of the coal company in support of its motion for a new trial. Under these circumstances, even assuming that the counterclaim could have been amended to state sufficient facts, it was not error for the court to deny such a request, because it came too late. *Peters v. Dove,* 83 Colo. 143, 263 Pac. 16.

Judgment affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE BUTLER and MR. JUSTICE BURKE concur.