No. 18,435.

NUCLA SANITATION DISTRICT *v.* E. J. RIPPY, ET AL.
(344 P. [2d] 976)

Decided October 13, 1959.

Mr. GEORGE V. KEMPF, for plaintiff in error.

Messrs. Delaney & Balcomb, Messrs. Cole, Mincer & Larson, for defendants in error.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court. ·

The parties appear here in the order of their appearance in the trial court.

The Nucla Sanitation District, hereinafter referred to as the District, was organized under the laws of the State of Colorado. It advertised for bids for the construction of a sewer system within the district to be opened on April 22, 1955. The low bidder was the defendant E. J. Rippy and Sons, hereinafter referred to as Rippy. The United States Fidelity and Guaranty Company was joined in the action as surety on Rippy's performance bond. The District considered two of the items in Rippy's bid to be excessive in price, and authorized Ripple and Howe, its engineers, to negotiate with the bidder thereon. This was done and Ripple and Howe then prepared, as is customary in public works construction, a written contract and mailed it to Rippy for approval and signing. On April 28, 1955, Rippy signed and returned the contract to the District accompanied by a letter which accepted the contract subject to the condition that the completion date be extended.

On May 4, 1955, the District removed Rippy's letter, which had been attached to the contract as a part thereof, executed the latter and substituted the following letter for the bidders and mailed it to Rippy:
"E. J. Rippy & Sons
 General Contractors
 New Castle, Colorado
"Gentlemen:
 "After receiving your letter of April 28th, enclosing the contracts, we consulted with our attorney, and with

Mr. B. V. Howe of Ripple and Howe. It was concluded that we would not enter into a special agreement relative to delays due to inability to get the material, but that, if such delays arise, they would be covered by Articles 17 and 18 of the General Conditions included in the contract.

"We have therefore executed the contract and are herewith returning two signed copies to you with this letter firmly attached.

"It appears that there was some over-calculation in Mr. Howe's computation of the amount of pipe to be laid, especially the 8-inch pipe, and he has indicated that he will immediately give you the correct figures so that you will not over-order and so that you may make your plans accordingly. The difference is within the limits of variance permitted by the contract.

"We shall be most happy to see the construction get under way and expect our relations in this work to be most agreeable.

"Very truly yours,
By Merle Rimer    /s/
Merle Rimer, President"

On either May 3 or May 4, 1955, William P. Rippy called Merle H. Rimer, the President of the District, and asked him if he had received his letter of April 28th; if everything was alright, and if it was alright to start moving in men and equipment. Mr. Rimer answered all of these questions in the affirmative. He did not comment upon the fact that the District did not agree with the modifications contained in the Rippy letter of April 28, 1955, and the latter had, at the time, no way of knowing that these proposed modifications had not been accepted by the District.

On May 6, 1955, Rippy started moving men and equipment to the town of Nucla. Testimony adduced at the trial indicated that this was done in reliance upon Mr. Rimer's assurance that the contract was "alright." The District's letter of May 4, 1955, was not delivered to

Rippy until May 7, 1955, and was not opened by Rippy until May 8, 1955. Thereupon, after consultation among the partners, Rippy decided to "shut down the job" because it "did not have any contract." One of the Rippys then drove to Nucla and work was halted on May 10, 1955. The next day the District and Rippy met in a special session to discuss the contract. Agreement upon certain changes in the proposed contract was reached at this meeting, it being the understanding of the parties that plaintiff's engineers would draw up a written amendment to the contract and submit it to the parties for execution.

On May 28, 1955, an instrument entitled "AMENDMENT TO THE CONTRACT, NUCLA SANITATION DISTRICT, NUCLA, COLORADO," was mailed from Denver, Colorado, to Rippy at New Castle, Colorado, by the engineers. The date of arrival of this contract at Rippy's office was not definitely established. However, it is immaterial because on May 31, 1955, Rippy sent a letter to the District advising it that since no written agreement had been received, he was withdrawing his offer and would consider no further offer made by the District. The District then arranged for the project to be completed by another contractor, who later left the work by mutual agreement and was released of further claims before completion. The District then completed the job at a greater cost than the Rippy contract called for.

On May 2, 1956, the District brought suit against Rippy and United States Fidelity and Guaranty Company. It sought damages for alleged breach of contract of the difference between its Rippy agreement and the amount it paid to complete the job. Rippy and United States Fidelity and Guaranty Company denied the existence of a contract and Rippy counterclaimed against the District for work done and expenses incurred in reliance on representations of the District. Trial was had to a jury, which returned its verdict in favor of Rippy

448

on both issues. The District here seeks reversal of the judgment.

■ As its first claim of error it asserts that the undisputed evidence proved a contract existed between it and Rippy, and that the trial court erred in submitting the determination of that issue to the jury. The applicable and controlling rule of law has been often stated by this court, a recent example being *Hall v. Gehrke* (1947), 117 Colo. 223, 185 P. (2d) 1016, in which it was stated:

"This fundamental principle has been recognized by our court from the earliest days, as will appear by the following from *Salomon v. Webster*, 4 Colo. 353, 361:

" 'Instead of accepting the identical offer made to him, he modifies it, and resubmits it to Webster, with such modification. This letter did not, therefore, of itself, conclude an agreement. Upon this point the law is clear. Unless the proposition made by one is accepted by the other, *without any modification whatever,* no contract arises. In such case there is no concurrence of parties.

" 'If the acceptance modifies the proposition in any particular, it amounts to nothing more than a counter proposition. It is not in law an acceptance which will complete the contract.' * * *."

■ An analysis of the above recited transactions discloses that at no one instant was there a meeting of the minds resulting in an acceptance of the contract without a modification of its terms. There was only a conditional acceptance by Rippy and in the absence of an acceptance of his counter offer no contract could result. *Williston on Contracts,* Revised Edition, Vol. 1, §77, page 222.

■ The District urges that for this rule to apply modifications must be substantial, citing as authority *Rugby Co. v. Interstate Co.* (1930), 87 Colo. 110, 285 Pac. 764. We do not so construe that case. A statement that the modifications of the contract there involved *were* substantial and material cannot be contorted into a rule

that such modifications *must* be substantial and material.

Plaintiff further urges that the court erred in instructing the jury as follows:

"However the acceptance must be in the identical terms of the offer, without any modification whatever, and if the acceptance modifies the proposition in any particular, it amounts to nothing more than a counterproposition, and is not an acceptance which will complete the contract."

Under the facts as disclosed by the record we are of the opinion that this instruction correctly stated the applicable law.

Plaintiff next asserts that by commencing work on the contract Rippy waived any modifications, stating that, "This action would in itself constitute an acceptance of the new offer if it be held that a new offer was actually made." The evidence, however, is undisputed that Rippy commenced operations only after being assured by Rimer that the contract had been signed, implying that it had been executed by the District in the same form in which it was submitted with qualifications by Rippy. The beginning of the work by Rippy before there was a final meeting of the minds under the facts presented did not bind the defendants to proceed when they discovered their counter offer had not in fact been accepted. Such was clearly the original understanding of the District for afterward on May 11th it met with Rippy in an effort to agree on a final form of contract.

Plaintiff asserts that the court erred in failing to give several of its tendered instructions. We have examined the questioned instructions and conclude the trial court was correct in rejecting them.

There being ample evidence to support the verdict of the jury, the judgment is affirmed.