No. 18,573.

SUPERIOR DISTRIBUTING CORPORATION *v.* TED POINTS.
(347 P. [2d] 140)

Decided November 30, 1959.

114

Mr. THOMAS K. HUDSON, for plaintiff in error.

Messrs. ROBERTSON, TULL, DANKS & HAYS, Mr. CLARKE W. KARR, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE KNAUSS delivered the opinion of the Court.

THE parties to this writ of error are here in inverse order of their appearance in the trial court. We shall refer to plaintiff in error as Superior and defendant in error as Points.

Points sought to recover from Superior the sum of $2,607.20 paid under a "Purchase Order" executed by Points and directed to Superior for the purchase of sixteen "Superior Hot Drink Bars" and supplies, for a total sum of $9,520.00. The "Purchase Order" was also signed by W. B. Swan, "Distributor." The "Order" specified as its terms "$2380.00 with order, and $227.20 for supplies. Bal. in 24 months by payments of $333.20 each carrying charged included. * * * This order gives Mr. Points exclusive buying rights for Agusts (sic) Ga. of Superior Hotdrink Bars until Oct. 1, 1956. * * * Superior Distributing Corporation agrees to obtain the initial location contracts for the above ordered equipment and will send their factory trained man to instruct the Purchaser in the service and maintenance of the above or-

dered equipment, * * *. The purchaser agrees that in the event of failure to complete purchase as detailed herein, the seller may enforce payment for the entire balance due on the above purchase order, or at seller's sole option, retain the advance payment as liquidated damages." Points alleged that Superior failed and refused to ship any of the merchandise specified and has failed and refused to return the payments made by him.

By answer the material allegations of the complaint were denied and in addition it was alleged that "said contract," referring to the Purchase order, "was entered into by plaintiff and an independent distributor and independent contractor."

Trial was to the court resulting in judgment in favor of Points for $2,607.20, being the total of the moneys paid by him on the "Purchase Order." From this judgment Superior brings the case here by writ of error seeking reversal.

It is undisputed in the record that Points, in response to a newspaper advertisement admittedly paid for by Superior, wrote a letter to Superior relative to the purchase of certain vending machines. In answer to Points' letter Superior wrote him saying "our district manager will soon be in your area and will call on you to explain fully our plan of operation." A few days later one Swan called on Points at his Illinois home and following that interview, in which Swan promised Points reimbursement for his traveling expenses to Denver, the latter came to Denver and saw certain officers of Superior and discussed with them the proposed deal as outlined to him by Swan. Points testified that while in Denver he discussed the terms of the contract outlined by Swan with officers of the company and that they agreed thereto. Returning to Illinois the agreement was incorporated in a "Purchase Order" on a form printed by Superior and signed by Swan as distributor, and on the day of its execution Swan telephoned the fact to Superior and on the following day invoices were sent to him by Superior.

The invoices incorporated the terms of the purchase order, showing a credit to Points for his plane fare to Denver. The invoices were dated March 20, 1956, and specified the "date of order" as "3/19/56." On or about March 26, 1956, Superior forwarded to Points a "Conditional Sales Contract" dated March 26, 1956, to which was attached a promissory note to be signed by Points in the sum of $7,996.80. This conditional sales contract among other terms provided, "It is understood and agreed that no verbal or written understanding or agreement of any kind exists in regard to the property or the payments therefor other than what is herein expressly stated; that all goods purchased hereunder are bought by the Purchaser in sole reliance on and subject to the manufacturer's warranty." The conditional sales contract further provided that Points had notice of the intended assignment of the said contract and the note attached thereto and provided that Points waived "all rights now or hereafter existing in Purchaser's [Points'] favor against Seller to make any defense, counterclaim or offset to any demand or action brought by assignee to recover payments due hereunder, or to enforce any rights hereunder, or to recover possession of said chattels, the Purchaser agreeing that all claims or demands on his part against Seller shall be independent of any action or claim by assignee against the Purchaser."

Nowhere in the conditional sales contract was any mention made of the "exclusive buying rights for Augusta, Ga." provided in the original sales order, nor was any mention made of the agreement in the original order that "Superior Distributing Corporation agrees to obtain the initial location contracts for the above ordered equipment and will send their factory trained service man to instruct the Purchaser [Points] in the service and maintenance of the above ordered equipment."

At the trial counsel for Superior stated: "The purchase order that he [Points] signed with the distributor just definitely sets forth 'this order is not sub-

ject to cancellation.' We are entitled to have that contract enforced against this man." As late as May 1956 Superior wrote to Points stating "our salesman, Mr. Swan, made several trips to Waverly, Illinois to see you and also several long distance calls." Superior is in no position to claim the benefits of this contract while denying its obligation and cannot now rely on the liquidated damage clause thereof.

When it became apparent that Points would not sign the conditional sales contract, if Superior did not then care to proceed under the terms of its purchase order, it was obligated to refund his money. Payment was made by Points by checks payable to and accepted by Superior, and it is idle to contend that Superior did not authorize or ratify Swan's actions. That they had full knowledge of his dealings with Points is confirmed by their reference to him as "our salesman" and "our district manager." Nothing was ever shipped to Points, and Superior still retains the money advanced under the purchase order.

Points was under no duty to execute the conditional sales contract under the record made here. Vital and important terms of the original agreement were omitted therefrom. Here we may note that the property to be sold to him was not even described in the proposed conditional sales agreement, while attached to that instrument was a promissory note which Superior intended that Points should sign before delivery of merchandise not described therein, but unquestionably the items which he had ordered in March 1956.

If we regard the "Purchase order" as an offer by Points, then it was not accepted by Superior. If it was a binding contract entered into by Swan as agent for Superior, then Superior breached it by attempting to substitute another and different contract, which Points refused to accept. In either event Superior cannot retain the fruits of the transaction and avoid its obligations.

We think it is plain under this record that Swan

118

was the agent of Superior, and his acts were well known to the company. Superior cannot rely on the liquidated damage clause of the purchase order and at the same time successfully contend that Swan had no authority to enter into it on behalf of Superior.

In *Goodwin v. Eller*, 127 Colo. 529, 258 P. (2d) 493, this court quoted with approval from *Iselin v. United States*, 271 U.S. 136, as follows: "It is well settled that a proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested."

See, also, *Nucla Sanitation District v. E. J. Rippey, et al.*, 140 Colo. 444, 344 P. (2d) 976.

Perceiving no error in the record the judgment is affirmed.